OPINION
{¶ 1} Defendant-appellant Peter B. Shehata (hereinafter "Peter") appeals from a decision of the Montgomery County Court of Common Pleas, Domestic Relations Division, which awarded the majority of the marital estate to appellee Karen F. Shehata (hereinafter "Karen") after the trial court found evidence of financial misconduct on the part of Peter. Peter contends that the trial court erred when it awarded all of the marital real estate equity to Karen. Peter also asserts that the trial court abused its discretion when it ordered a distributive award after finding that Peter had committed financial misconduct. Peter argues that the court erred when it failed to award him spousal support as well as a portion of Karen's retirement fund which was accumulated during the course of their marriage. Lastly, Peter argues that the court abused its discretion when it failed to provide a schedule for parenting time, and instead, limited Peter's visitation to be at Karen's discretion. For the following reasons, the judgment of the trial court will be affirmed.
 I {¶ 2} Peter and Karen were married on March 6, 1993, in Paris, France, and the couple produced two children during their marriage, Taylor D/O/B 10/29/97, and Angela D/O/B 4/26/00. While they were married, Peter and Karen acquired certain real estate consisting of six rental properties located in Dayton, Ohio: 609-611 Clover Street, 120-122 South McGee Street, 1249-1251 Carlisle Avenue, 137 Alden Street, 500-502 Oak Street, and 24-26 Bell Street. The parties also purchased their private residence at 3401 Westbury Road, in Dayton. The trial court found that the marital estate consisted of other personal property including various small financial accounts, Karen's retirement fund, household furnishings, automobiles, and stock in SCR Construction, the business the parties formed to manage and maintain their rental properties. While both Peter and Karen worked together to maintain the rental properties, Karen also taught French in Dayton Public Schools.
 {¶ 3} It is undisputed that following the parties' separation in September, 2002, Peter advanced himself the sum of $60,000.00 from their joint equity line. At trial, Peter testified that he took out the equity line in order to reimburse his family members for loans made to him and Karen to help them purchase and renovate the rental properties described above. In light of evidence adduced at trial, the court did not find Peter's explanation to be credible and found that he had committed gross financial misconduct. Thus, the trial court awarded Karen all of the equity in the marital manse as well as the rental properties amounting to $143,500.00 in addition to rental income from those properties. Because the trial court found that Karen's retirement plan contained only a small sum of money, she was allowed to retain the fund in its entirety. On November 4, 2004, the parties executed an "Agreed Order" in which Peter was afforded limited visitation with his children including overnight stays.
 {¶ 4} It is from this judgment that Peter presently appeals.
 II {¶ 5} In his brief, Peter presents five assignments of error for our review. Because the first, second, and fifth assignments all essentially concern the same issue, we will address these assignments simultaneously:
 {¶ 6} "The trial court abused its discretion when it awarded all of the marital real estate equity to plaintiff."
 {¶ 7} "The trial court erred and abused its discretion by finding appellant committed financial misconducted (sic) and therefore ordering a distributive award."
 {¶ 8} "The trial court abused it (sic) discretion by failing to award of One-Half of appellee's strs retirement to appellant."
 {¶ 9} In these assignments of error, Peter contends that the trial court's division of the marital property was erroneous. In particular, he avers that the decision was an abuse of discretion. We disagree.
 {¶ 10} Marital property is defined as any real property, personal property, or interest therein that is owned by either or both spouses that were acquired by either or both spouses during the course of their marriage. R.C. § 3105.171(A)(3)(a). "A trial court is vested with broad discretion when fashioning [the] division of marital property." Biskerv. Bisker (1994), 69 Ohio St.3d 608, 609, 635 N.E.2d 308, citing Berishv. Berish (1982), 69 Ohio St.2d 318, 432 N.E.2d 183.
 {¶ 11} Accordingly, an appellate court will uphold a division of marital property absent a determination that the trial court abused its discretion. Martin v. Martin (1985) 18 Ohio St.3d 292, 294-295,480 N.E.2d 1112. See, also, Kaechele v. Kaechele (1988), 35 Ohio St.3d 93,94, 518 N.E.2d 1197. "An abuse of discretion is more than an error of law or of judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying an abuse of discretion standard, the appellate court is not free to simply substitute its judgment for that of the trial court. Berk v. Matthews (1990),53 Ohio St.3d 161, 559 N.E.2d 1301. A trial court has broad discretion to determine what property division is equitable in a divorce proceeding.Cherry v. Cherry (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. The mere fact that property division is unequal, does not, standing alone, amount to an abuse of discretion. Id.
 {¶ 12} Under an abuse of discretion standard, the trial court did not err when it awarded all of the equity in the marital real estate to Karen. R.C. § 3105.171 states in pertinent part:
 {¶ 13} "(C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section."
 {¶ 14} "(E)(3) If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."
 {¶ 15} "(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 16} "(1) The duration of the marriage;
 {¶ 17} "(2) The assets and liabilities of the spouses;
 {¶ 18} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 19} "(4) The liquidity of the property to be distributed;
 {¶ 20} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 21} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 22} "(7) The costs of the sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 23} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 24} "(9) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 25} At trial, Peter testified that he withdrew the $60,000.00 line of equity to pay off loans made by his family members to the then married couple in order to help them purchase and renovate the rental properties already mentioned. Peter's sister-in-law, Anmarie Shehata (herinafter "Anmarie"), testified that all of the sums which were lent to the couple by Peter's brother, mother, and father were, in fact, loans which were meant to be repaid. In order to prove this, Anmarie produced signed documents that she drafted herself which apparently evidenced the loans themselves and the amount of each.
 {¶ 26} However, Anmarie conceded the loan documents had not been in existence prior to the couple's separation and that she had drafted the documents in preparation for the divorce proceedings. Interestingly, at the time the loans were allegedly made in 1999, no documents were drafted to reflect the transfers. The actual loan documents entered into evidence were drafted by Anmarie in late 2002 and early 2003. Anmarie testified that Karen's signature was not present on any of the documents she produced. Moreover, Karen provided the court with official documentation signed by Peter's father, Boshra, which indicated that the sum of $34,000.00, which Anmarie testified that she and Peter's brother had loaned to the couple, was actually Peter's profit from the sale of an apartment that he owned in Egypt.
 {¶ 27} Although Peter's testimony reflects that he took out the equity line to pay off his relatives, the circumstances surrounding the transaction render his testimony suspect. From the record, it clear that the trial court did not abuse its discretion when it concluded that Peter committed financial misconduct when he unilaterally took out the equity line on the parties' marital property. The trial court was justified in finding the evidence concerning the alleged loans and accompanying documentation to be wholly without merit. Under R.C. § 3105.171, the trial court was well within its discretion when it found that Peter had attempted to defraud Karen at the conclusion of their marriage. Thus, the trial court did not act in an unreasonable or arbitrary manner when it awarded Karen the balance of the marital real estate as well as $143,500.00 in equity from said real estate.
 {¶ 28} Lastly, the trial court did not abuse its discretion when it awarded Karen's STRS plan solely to her finding that a division of the retirement plan would yield an insignificant sum of money. In light of the court's finding with respect to the retirement plan as well as Peter's financial misconduct, the court's decision to award the plan to Karen will not be disturbed on appeal.
 {¶ 29} Peter's first, second, and fifth assignment of error are overruled.
 III {¶ 30} Peter's third assignment is as follows:
 {¶ 31} "The trial court abused its discretion by failing to award spousal support to appellant given the weight of the evidence."
 {¶ 32} In his third assignment or error, Peter contends that the trial court erred when it failed to order Karen to pay him spousal support in light of the disparity between the parties' respective incomes following their separation. Peter argues that at the time of the trial, Karen was earning approximately $47,000.00 a year as a teacher whereas he was earning $8.00 an hour for thirty hours a week for his brother's construction company.
 {¶ 33} A trial court has broad discretion in domestic relations matters, including the formulation of spousal support awards. Blakemore,5 Ohio St.3d at 218. Spousal support is statutorily defined as "any payments or payments * * * that is both for sustenance and support of the spouse or former spouse." R.C. § 3105.18(A). This court has consistently held that an award of spousal support must be underpinned by proof of two matters: the obligee's need for support and the obligor's ability to pay. Murphy v. Murphy (Nov. 1, 1996), Ohio App. 2 Dist. No. 15693, citing, Layne v. Layne (1992) 83 Ohio App.3d 559, 615 N.E.2d 332.
 {¶ 34} In determining whether spousal support is reasonable and appropriate, a trial court is obliged to consider the fourteen non-exclusive factors set forth in R.C. § 3105.18(C)(1). Kaechele,
supra. With respect to these factors, we have opined that each factor is "related, directly or indirectly, either to the obligee spouse's need for sustenance or the obligor spouse's ability to pay." Seagraves v.Seagraves (April 19, 1996), Montgomery App. No. 15588, unreported. Thus, we have reasoned that even if an award of spousal support is reasonable, it cannot be appropriate unless it is for the sustenance of the obligee spouse. Id.
 {¶ 35} The record reveals that other than making note of the disparity between the parties' post-separation incomes, Peter provided the trial court with scant evidence of his own need for spousal support from Karen. It was not even clear that Peter was making an attempt to work at the time of the divorce proceedings. Moreover, Karen presented evidence that her teaching contract was not going to be renewed for the following school year, and as a result, she would no longer be earning $47,000.00 per year. Based on the paucity of evidence adduced with respect to Peter's need for spousal support and the evidence presented by Karen that her teaching position was being eliminated, the trial court did not abuse its discretion when it failed to award Peter any spousal support.
 {¶ 36} Peter's third assignment of error is overruled.
 IV {¶ 37} Peter's fourth and final assignment is as follows:
 {¶ 38} "The trial court abused its discretion by failing to provide a schedule of parenting time for appellant."
 {¶ 39} In his fourth assignment of error, Peter argues that the trial court abused its discretion when it limited visitation with his children to be at Karen's discretion. Under the court's order, Karen would be able to determine the circumstances and duration of Peter's involvement with Taylor and Angela, the parties' two minor children.
 {¶ 40} On, November 4, 2004, however, Peter and Karen entered into an Agreed Order wherein Peter was provided with limited visitation of his children with overnight visitation to be available after Peter properly petitions the trial court. The Agreed Order is signed by both parties, and in his Reply brief, Peter acknowledges the Agreed Order. Peter attempts to dispute the trial court's ruling with respect to visitation, however, the Agreed Order renders Peter's fourth assignment moot, and we will not address it in this appeal.
 {¶ 41} Peter's fourth assignment of error is moot.
 V {¶ 42} All of Peter's assignments of error having been overruled or rendered moot, the judgment of the trial court is affirmed.
Wolff, J. and Grady, J., concur.