OPINION
{¶ 1} This matter is before the Court on the pro se Notice of Appeal of Jack H. Parker, filed August 25, 2006. Jack and Susanne Kohl-Parker were married on February 10, 1996. No children were born of the marriage. The parties separated on June 8, 2004. On June 11, 2004, Parker filed a complaint for divorce from Susanne and, following a trial, Jack and Susanne's Final Judgment and Decree of Divorce was filed on July 27, 2006. *Page 2 
 {¶ 2} Jack asserts seven assignments of error. We note initially that Susanne argues that Jack's assignments of error must be disregarded, and the trial court's judgment affirmed, due to Jack's failure to comply with App. Rs. 12 and 16. App.R. 16(A)(3) requires an appellant to include in his brief a "statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." App. R. 16(D) provides that "[r]eferences in the briefs to parts of the record shall be to the pages of the parts of the record involved." "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * * ." App.R. 12(A)(2).
 {¶ 3} We agree that Jack failed to properly cite to the record in his brief. In his Reply, however, Jack asserts that "references to Appellee's testimony can be observed in the last two hours of the trial transcript," thus we will not disregard Jack's assignments of error but instead will address their merits.
 {¶ 4} Jack's first assignment of error is as follows:
 {¶ 5} "THE TRIAL COURT ERRED BY NOT ASSIGNING FINANCIAL MISCONDUCT TO THE APPELLEE FOR CONCEALING AND/OR AVOIDING DISCLOSURE OF THRIVENT LUTHERAN IRA HOLDINGS, FOR ACCOUNT TRANSFERS OF MARITAL FUNDS TO HER DAUGHTER'S PERSONAL ACCOUNT TO CONCEAL MARITAL HOLDINGS, FOR INFLATING LIVING EXPENSE DECLARATIONS FOR SUPPORT DETERMINATION, AND FOR REMOVING SUBSTANTIAL FUNDS FROM JOINT LLC ACCOUNTS FOR PERSONAL USE"
 {¶ 6} In Ohio, "[m]arital property is defined as any real property, personal property, or interest therein that is owned by either or both spouses that [was] acquired by either or both spouses *Page 3 
during the course of their marriage. R.C. § 3105.171(A)(3)(a). `A trial court is vested with broad discretion when fashioning [the] division of marital property.' (Internal citations omitted).
 {¶ 7} "Accordingly, an appellate court will uphold a division of marital property absent a determination that the trial court abused its discretion. (Internal citations omitted). `An abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable.' (Internal citation omitted). When applying an abuse of discretion standard, the appellate court is not free to simply substitute its judgment for that of the trial court. (Internal citation omitted). A trial court has broad discretion to determine what property division is equitable in a divorce proceeding. (Internal citation omitted). The mere fact that property division is unequal, does not, standing alone, amount to an abuse of discretion." Shehata v. Shehata, Montgomery App. No. 20612,2005-Ohio-3659.
 {¶ 8} R.C. 3105.171 provides:
 {¶ 9} "(C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section."
 {¶ 10} "(E)(3) If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."
 {¶ 11} "(F) In making a division of marital property and in determining whether to make and *Page 4 
the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 12} "(1) The duration of the marriage;
 {¶ 13} "(2) The assets and liabilities of the spouses;
 {¶ 14} * * *
 {¶ 15} (4) The liquidity of the property to be distributed;
 {¶ 16} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 17} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 18} "(7) The costs of the sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 19} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 20} "(9) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 21} Both Jack and Susanne accused each other of financial misconduct. The trial court determined that there was no financial misconduct on the part of Susanne, but that Jack dissipated marital funds to support his girlfriend and her son. The court ordered Jack to reimburse Susanne for her share of marital funds spent on Jack's girlfriend.
 {¶ 22} Jack argues herein that Susanne did not disclose her IRA. During her cross-examination, Susanne testified as follows regarding her IRA:
 {¶ 23} "Q. * * * How about your Thrivent account, did you disclose that?
 {¶ 24} "A. That is a — we talked about this this morning. That was a rollover to an IRA *Page 5 
from employment I entered and left before I even married Jack Parker.
 {¶ 25} "Q. Did you disclose any information about the Thrivent account?
 {¶ 26} "A. I mentioned Thrivent exists." Susanne's affidavit of financial disclosure listed her Thrivent account but indicated that its balance was unknown. Plaintiff s exhibit 31 is a statement indicating the balance of the Thrivent account.
 {¶ 27} The trial court determined, "Defendant has an account with Thrivent Financial for Lutherans which consists of an Individual Retirement Account and Annuity which shall be retained by the Defendant as her sole and separate property as they were established prior to the marriage." It is clear from the record that Susanne did not conceal the assets in her Thrivent Account, and the trial court did not abuse its discretion in determining that the IRA was Susanne's separate property.
 {¶ 28} Jack further cites the "failure of the trial court to assign financial misconduct to Susanne's failure to fully disclose her joint account activity with her daughter for the purposes of hiding marital monies." Jack argues that Susanne transferred marital funds from her Code Credit Union account into an account with BMI Credit Union in the joint names of Susanne and her daughter from a previous marriage. Susanne did not disclose the BMI Credit Union account at issue, and the trial court in its Decision "admonished" her for failing to comply with the court's rules.
 {¶ 29} Susanne presented wire transfer receipts showing that her father in Germany transferred substantial sums to Susanne's Code Credit Union account in 2002 and 2003. While Jack argued that the sums were gifted to both Susanne and Jack, the trial court found "Susanne's testimony regarding gifted funds from [Germany] to her alone credible." Susanne also presented evidence that she received substantial sums from life insurance policies that Susanne had in place in Germany that were paid for with money Susanne received when she and her first husband sold their *Page 6 
home there. There was no evidence presented that the amounts transferred to the BMI account from Susanne's Code Credit Union account were marital funds. Since the record does not establish, as Jack argues, that Susanne was attempting to hide marital funds in the BMI account, the trial court did not abuse its discretion in finding no financial misconduct on the part of Susanne.
 {¶ 30} Jack argues that Susanne falsified her living expenses and that her award of temporary support was erroneous. Civ. R. 76(N) provides, "Upon request, in writing, after any temporary spousal support * * * order * * * is journalized, the court shall grant the party so requesting an oral hearing within twenty-eight days to modify the temporary order." Jack did not request a hearing to contest the award of temporary support, thus he has waived his right to do so on appeal.
 {¶ 31} Finally, Jack argues that the trial court should have assigned "financial misconduct to Susanne's withdrawal of LLC funds and subsequent false testimony of their purpose." While married Jack and Susanne formed a limited liability corporation that owned and managed two rental properties and a time share. Susanne testified on cross-examination that the operating agreement of the LLC provided for the rental income from the LLC to pay for the couple's joint long-term care insurance policy and a disability policy for Susanne. Susanne testified that the premiums for the policies totaled $180.96 a month and that she transferred that amount from the LLC account to her Thrivent account, from which the payments were deducted automatically.
 {¶ 32} On November 9, 2004, there was a withdrawal of $1266.72 from the LLC account to Susanne. She testified, "May through whatever the date that is, because that's when I started doing the monthly reimbursement of what I have been paying what the LLC ought to be paying, so I went back to May, tallied 180, however many months that is, that's what that is." The product of $180.96 and seven (months) is $1266.72. Jack provided no evidence that Susanne withdrew the money for *Page 7 
personal use, and the trial court did not abuse its discretion in finding no financial misconduct. Jack's first assignment of error is overruled.
 {¶ 33} Jack's second assignment of error is as follows:
 {¶ 34} "THE TRIAL COURT ERRED BY NOT DIVIDING SUBSTANTIAL MARITAL FUNDS HELD BY THE APPELLEE IN HER CODE CREDIT UNION AND BMI CREDIT UNION."
 {¶ 35} For the reasons discussed above, we see no abuse of discretion in the trial court's determination that the money at issue was Susanne's separate property. Jack's second assignment of error is overruled.
 {¶ 36} Jack's third assignment of error is as follows:
 {¶ 37} "THE TRIAL COURT ERRED BY NOT ATTRIBUTING SUBSTANTIAL HOLDINGS BY THE APPELLEE IN HER INDIVIDUAL RETIREMENT AND ANNUITY ACCOUNTS AS MARITAL HOLDINGS FOR DIVISION"
 {¶ 38} As discussed above, the trial court determined that Susanne's IRA was a rollover IRA from an account established before her marriage to Jack and that her annuity was her separate property as well. Jack points to no evidence to the contrary. We see no abuse of discretion, and Jack's third assignment of error is overruled.
 {¶ 39} Jack's fourth assignment of error is as follows:
 {¶ 40} "THE TRIAL COURT ERRED BY ATTRIBUTING THE APPELLANT'S ACCUMULATED ANNUAL LEAVE AS MARITAL PROPERTY SUITABLE FOR DIVISION"
 {¶ 41} The trial court noted that Jack accrues annual leave at the rate of 8 hours per pay period and sick leave at the rate of 4 hours per pay period, both of which are valued at $49.70 per *Page 8 
hour, and that Jack has 26 pay periods in a year. The maximum amount of leave that Jack could carry over year to year is 240 hours, and the court determined that 240 hours of leave is a marital asset subject to division. See Hartley v. Hartley (April 24, 1998), Montgomery App. No. 16668. The court determined that 240 hours of leave time equates to $11,949.60 and awarded Susanne $5974.80 as her equitable share. We cannot say that the trial court abused its discretion in determining that only the portion of leave that Jack can carry over each year is subject to division. Jack's fourth assignment of error is overruled.
 {¶ 42} Jack's fifth assignment of error is as follows:
 {¶ 43} "THE TRIAL COURT ERRED BY NOT ATTRIBUTING MONIES TAKEN BY THE APPELLEE FROM THE MARTIALLY (sic) LIMITED LIABILITY CORPORATION FUNDS AS MARITAL PROPERTY SUITABLE FOR DIVISION"
 {¶ 44} As we determined above, Jack points to no evidence that the money Susanne withdrew from the LLC was spent solely for her personal use. Jack's fifth assignment of error is overruled.
 {¶ 45} Jack's sixth assignment of error is as follows:
 {¶ 46} "THE TRIAL COURT ERRED IN THE DIVISION OF THE APPELLANT'S RETIREMENT ACCOUNT IN NOT CONSIDERING PREVIOUS DIVISION OF THE APPELLANT'S RETIREMENT UNDER A PREVIOUS DECREE OF DIVORCE [93-DR-135, p. 4] AND SUBSEQUENT ENTRY OF DIVISION OF SERVICE RETIREMENT BENEFITS"
 {¶ 47} The trial court noted that Susanne's interest in Jack's retirement began at the start of the parties' marriage. The court ordered that her interest be determined by a coverture fraction, "the numerator of which shall be equal to the term of this marriage: 8 years and 4 months, or 100 months. *Page 9 
The denominator will be determined by Jack's total years of participation at retirement or earlier date at which Susanne would qualify for receipt of said benefits. Said fraction will determine the marital portion subject to equal division." We see no abuse of discretion in the trial court's equal division of Jack's retirement benefits that accrued during the course of his marriage to Susanne. Jack provides no authority for the proposition that it was error to so divide them because they were subj ect to division in a previous divorce. Jack's sixth assignment of error is overruled.
 {¶ 48} Jacks' seventh assignment of error is as follows:
 {¶ 49} "THE TRIAL COURT ERRED BY NOT GIVING CONSIDERATION TO THE APPELLEE'S SETTLEMENT PROCEEDS, HER ACTUAL LIVING EXPENSES AND THE LENGTH OF THE APPELLANT'S SPOUSAL SUPPORT TO THE APPELLEE, IN THE FINAL AWARD OF PERMANENT SUPPORT"
 {¶ 50} Jack argues that the trial court's award of spousal support was excessive.
 {¶ 51} "We review support awards for abuse of discretion."Canfarelli v. Canfarelli (July 24, 2000), Montgomery App. No. 18145.
 {¶ 52} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 53} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 54} "(b) The relative earning abilities of the parties;
 {¶ 55} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 56} "(d) The retirement benefits of the parties; *Page 10 
 {¶ 57} "(e) The duration of the marriage;
 {¶ 58} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 59} "(g) The standard of living of the parties established during the marriage;
 {¶ 60} "(h) The relative extent of the education of the parties;
 {¶ 61} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 62} "(j) The contribution to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acqusition of a professional degree of the other party;
 {¶ 63} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 64} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 65} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 66} "(n) Any other factor that the court expressly finds to be relevant and equitable." R.C. 3105.18.
 {¶ 67} The trial court considered the above factors as follows: "This is an 8-year 4-month marriage, or a 100-month marriage. * * * Mrs. Kohl-Parker is 46 years old. She obtained a Bachelor's Degree in Art in 1990 and Master's Degree in Administration in 1995. All of these *Page 11 
degrees were earned prior to her marriage to Jack.
 {¶ 68} "The parties did not have any children together * * *
 {¶ 69} "Susanne worked as a consultant, grant writer and desktop publisher during the marriage. She earned approximately $25,000 each year. * * * The most she ever made while living with Jack was approximately $50,000. Jack testified that during their marriage Susanne's income was supplemental, he was the primary wage earner.
 {¶ 70} "Mr. Jack H. Parker, Jr. Is 51 years old. He is a research scientist with the Department of Defense at Wright Patterson Air Force Base. He has worked at Wright Patterson since 1974. Jack presently earns approximately $107,000.00. At the time of the parties' separation he earned approximately $104,000.
 {¶ 71} "Jack testified he received a Masters Degree in 1986 and a Ph.D. in 1998.
 {¶ 72} "Jack stated the parties kept their finances separate during the marriage. At the time of their separation Susanne earned low 20's annually and he earned about $100,000. They lived in a nice home in Centerville, had austere home furnishings and modest expenses. * * *"
 {¶ 73} In determining Susanne's post-decree support, the court determined, "She is presently living in Maryland and is employed with the Epilepsy Foundation of America earning $56,000 annually. She previously had consulting contracts * * * however she testified she earns a very minimal amount of money now in this area, approximately $2,500.00 annually. Her combined annual income is approximately $58,500. Her present income is more than double what she earned while the parties lived together.
 {¶ 74} "Jack now earns $107,000, continuing to be employed at Wright Patterson Air Force Base. He lives in a home. He drives a 2005 Toyota Sienna truck. *Page 12 
 {¶ 75} "Susanne continues to live an economical lifestyle. She testified she is renting an apartment for $600 per month, with monthly utilities of $30 to $70. She hardly goes out to restaurants to eat. Her recreation is a membership at Bally's. She drives a 2000 Honda Accord, purchased post-separation.
 {¶ 76} "Susanne appears in good health and did not present any evidence that she is suffering from any debilitating physical or mental health issues.
 {¶ 77} "Jack is maintaining at least the standard of living he enjoyed while married. * * *
 {¶ 78} "Jack appears in good health and did not present any evidence that he is suffering from any debilitating physical or mental health issues.
 {¶ 79} "Jack's work history and education should afford him the opportunity to continue to increase his income until he chooses to retire. Susanne has a brief work history with her present employer therefore the stability of the same is less able to be predicted. She does have a history of consulting contracts that will insure she can continue to earn a living. Even though Susanne earns more now than ever during the time she lived with Jack, there continues to be a disparity in the income levels of the parties, as well as their income producing abilities."
 {¶ 80} The court determined "Mr. Parker shall pay to Mrs. Kohl-Parker as and for spousal support, the sum of $750.00 per month, plus 2% processing fee." The support is to terminate upon the death of either party or upon Susanne's remarriage or cohabitation, whichever occurs first.
 {¶ 81} The final decree further provides, "This Court specifically retains jurisdiction over the issue of spousal support and may modify the amount or term of this spousal support order upon the change of circumstances of a party, which includes, but is not limited to, any increase or involuntary decrease in the parties' wages, salary, bonuses, living expenses, medical expenses, or other income in *Page 13 
accordance with § 3105.18(E)(1), (F) O.R.C."
 {¶ 82} The Supreme Court of Ohio created a presumption in favor of spousal support awards of definite duration in Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 554 N.E.2d 83, determining, "Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities." "The presumption may be rebutted by evidence of any of the matters the Kunkle court discussed." Templeton v. Templeton (Oct. 5, 2001), Montgomery App. No. 18860. We have previously noted, "all persons, male or female, should strive to be as self-sufficient as possible, without unduly burdening others." Canfarelli.
 {¶ 83} In Canfarelli, as here, the trial court provided an indefinite spousal support award and retained jurisdiction to modify the award as to amount and duration. We determined that the trial court abused its discretion in failing to specify a termination date for the award where the wife was 38 years old at the time of the divorce hearing, in good health, attending college and expecting to earn between $25,000 and $31,000 per year after graduation, and where the parties had been married 14 years and the youngest of three children was only five or six years away from high school graduation. Id.
 {¶ 84} We noted "that in cases where indefinite support has been allowed, the facts have been much different. For example, in Gessler v.Gessler (May 16, 1997), Montgomery App. No. 16220 * * *, we found no abuse of discretion in an indefinite spousal support award. However, the *Page 14 
wife in Gessler was sixty-five years old, had a high school education, and had never worked during the marriage. She also had limited work-related skills and was afflicted with an arthritic condition that affected her ability to use her hands. * * * Similarly, in Layne v.Layne (1992), 83 Ohio App.3d 559, 615 N.E.2d 332, we found that the trial court had abused its discretion in ordering a definite termination date (four years) for spousal support, where the marriage was twenty-six years in duration, and wife was not employed outside the home, was in poor health, and was currently precluded from obtaining employment." Id.
 {¶ 85} Jack and Susanne's eight year marriage was not one of long duration. Susanne was only 46 years old at the time of the final hearing and not of advanced age. She and Jack had no children together, and Susanne's children are grown. She holds two degrees, has past work experience and was working at the time of the final hearing. Susanne is in good health. In other words, she has the resources, ability and potential to be self-supporting, and the trial court abused its discretion in failing to provide for the termination of her spousal support award. Jack's seventh assignment of error is sustained. Judgment reversed and remanded.
 BROGAN, J. and GRADY, J., concur. *Page 1