[Cite as *Montei v. Montei*, 2013-Ohio-5343.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

GRETCHEN M. MONTEI          :
nka WELLS
                           :
    Plaintiff-Appellant          :        C.A. CASE NO.    2013 CA 24

v.                          :        T.C. NO.    06DR568

JAMIE H. MONTEI            :        (Civil appeal from Common
                                      Pleas Court, Domestic Relations)
    Defendant-Appellee          :

                           :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the     6th     day of     December    , 2013.

· · · · · · · · · ·

VALERIE JUERGENS WILT, Atty. Reg. No. 040413, 333 N. Limestone Street, Suite 104, Springfield, Ohio 45503
    Attorney for Plaintiff-Appellant

BEVERLY FARLOW, Atty. Reg. No. 0029810, 270 Bradenton Avenue, Suite 100, Dublin, Ohio 43017
    Attorney for Defendant-Appellee

· · · · · · · · · ·

FROELICH, J.

    **{¶ 1}** Gretchen Montei (nka Wells) appeals from a judgment of the Clark

County Court of Common Pleas, Domestic Relations Division, which granted Jamie Montei's motion to modify the parties' shared parenting agreement and, on the basis of that change, terminated Montei's child support obligation.

{¶ 2} The judgment of the trial court will be affirmed in part and reversed in part. The judgment will be affirmed to the extent that it found a change of circumstances and that the child's best interest would be served by a modification of the shared parenting agreement. The judgment of the trial court will be reversed to the extent that the modified shared parenting plan did not address all of the statutory factors required of a shared parenting plan and incorporated an incomplete agreement of the parties; the matter is remanded for further consideration of the terms of the modified shared parenting plan. Mr. Montei's motion for a stay of the appellate proceedings is denied.

*Facts and Procedural History*

{¶ 3} The parties were divorced in August 2007, when their daughter was three years old. At the time of the divorce, they agreed to a shared parenting plan, which provided that Ms. Wells was the residential parent for school purposes and provided parenting time to Mr. Montei. Under this agreement, the child spent four days with Mr. Montei every other week, and Mr. Montei was ordered to pay child support. The agreement contained additional provisions regarding discipline, parental conduct, extracurricular activities, holidays, telephone access, the right of first refusal for babysitting, health insurance, and the like.

{¶ 4} On November 24, 2010, Mr. Montei filed motions to hold Ms. Wells in

contempt and to modify the shared parenting plan. Both motions were based on the following alleged violations of the shared parenting plan: 1) use of alcohol or drugs in the presence of the child, 2) physical discipline of the child, and 3) denial of right of first refusal for babysitting throughout the summer of 2009, while Ms. Wells was working and Mr. Montei was not working. Originally, Mr. Montei's proposed modification was to switch the parties' roles and parenting times, but later in the proceedings, Mr. Montei proposed that the parties divide their parenting time equally, week by week.

{¶ 5} In April 2011, while Mr. Montei's motions were pending, the parties and their attorneys negotiated about the parenting issues and executed a modified shared parenting agreement, which was presented to the court as Defendant's Exhibit 6. This plan called for the parties to alternate weekly parenting time and eliminated Mr. Montei's child support obligation; it also named Mr. Montei as the residential parent for school placement. Both parties signed the agreement, but Ms. Wells subsequently disavowed her alleged agreement to the terms of the modified shared parenting plan.

{¶ 6} In July 2011, the guardian ad litem filed a report in which she stated that she did not see any need for a change in parenting time, but that she believed the continuation of shared parenting was inadvisable, because the parties did not appear to be able to work together. She also recommended that they end the "right of first refusal" for babysitting, because it was "a constant cause of stress and argument between the parties."

{¶ 7} In March 2012, Ms. Wells filed a motion to modify parental rights and responsibilities, which sought to terminate shared parenting and have her (Ms. Wells) designated as the residential parent and legal custodian, because of Ms. Wells's concerns

about her daughter's "well being and safety" at Mr. Montei's home.  Specifically, Ms. Wells cited Mr. Montei's "pornography and sexual habits," violence, negativity toward Ms. Wells, and concerns about the parenting abilities of Mr. Montei's live-in girlfriend.

{¶ 8}    A hearing was held on Mr. Montei's and Ms. Wells's motions on eight dates between August 2011 and January 2013.  During this lengthy process, the parties filed various additional motions, and the issues before the court changed.  By the time the hearings ended, Mr. Montei sought to enforce the parties' modified shared parenting agreement of April 2011 (rather than to modify otherwise the shared parenting plan, as requested in his original motion), and Ms. Wells sought to terminate shared parenting.  In February 2013, the trial court granted Mr. Montei's motion to modify shared parenting by enforcing the parties' modified shared parenting agreement of April 2011, and it overruled Ms. Wells's motion to terminate shared parenting.  In keeping with the modified shared parenting agreement, the court also terminated Mr. Montei's child support obligation and designated him as the residential parent for school purposes.  It ordered the parties to pay their own attorney fees.

{¶ 9}    Ms. Wells raised five assignments of error on appeal from the trial court's judgment.  Mr. Montei did not respond with a brief of his own.

{¶ 10}    After reviewing Ms. Wells's arguments and the record of the case, we noted that the trial court's judgment, which sought to incorporate and attach the 2011 agreement by the parties as to the modification of shared parenting, was apparently missing some pages of the agreement.  In a Decision & Entry dated October 9, 2013, we remanded the matter to the trial court with the following instruction:  if all of the pages of the parties'

agreement were before the court and were reviewed by the court before it rendered its judgment, the court should correct its judgment by means of a nunc pro tunc entry; if all of the pages were not before the court when it entered its decision, the court "may take no further action, except by agreement of the parties to incorporate the missing pages." In the latter circumstance, where the missing pages were omitted from the record entirely, we indicated that we would review Ms. Wells's assignments of error on the record before us.

{¶ 11} On November 5, 2013, Mr. Montei filed a motion with this court for a stay of proceedings "for the purpose of correcting the record as transmitted from the trial court." The motion asserts that the trial court held a hearing on October 31, 2013, to address the issue of the missing pages, at which the court "suggested that the parties obtain a stay of appellate proceedings so that a motion pursuant to Ohio Civil Rule 60(B) could be filed with the trial court so as to allow the court to correct the record with a full and accurate copy" of the 2011 shared parenting agreement that it had intended to incorporate into its judgment. On November 6, Ms. Wells filed a motion in opposition to Mr. Montei's request for a stay.

{¶ 12} On November 8, 2013, the trial court filed an entry in which it acknowledged our request for additional information and that a hearing had been held on October 31, 2013, but indicated that it would "await the Appellate Court's ruling" on Mr. Montei's motion for a stay before addressing the question posed in our remand. Thus, the trial court did not respond directly to our request that it clarify the record by one of the means discussed above.

{¶ 13} App.R. 7(A) provides for "a stay of the judgment or order of a trial court pending appeal * * *." Here, however, Mr. Montei has moved "for an order staying the

appellate proceedings," so App.R. 7 is not applicable. He also references App.R. 9(E), which provides that "differences in the trial record shall be submitted to the trial court," and there is nothing on the trial court's docket, except its decision on our remand, which addresses App.R. 9(E).

{¶ 14} A direct appeal divests the trial court of jurisdiction to rule on a Civ.R. 60(B) motion, such as the parties reference in their memoranda. "Jurisdiction may be conferred on the trial court only through an order by the reviewing court remanding the matter for consideration of the Civ.R. 60(B) motion." *Howard v. Catholic Social Serv. of Cuyahoga Cty, Inc.,* 70 Ohio St.3d 141, 147, 637 N.E.2d 890 (1994), .

{¶ 15} Mr. Montei's request for a stay, if granted, would have the effect of suspending the appeal. But without further action of this court (for which no motion has been made), it would not confer on the trial court jurisdiction to consider a Civ.R. 60(B) motion.[1] Even if we were to consider the motion as a motion for a limited remand, there is no Civ.R. 60(B) motion pending in the trial court. In other words, a stay would not serve any useful purpose or, particularly, the purpose that Mr. Montei thinks it would serve. Moreover, it would further delay a decision in this expedited appeal. Thus, Mr. Montei's motion for a stay is DENIED. Insofar as the trial court has not responded to the question posed in our remand, we will decide the appeal on the record before us.

{¶ 16} Ms. Wells's first assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT

DECLARED DEFENDANT'S EXHIBIT "6" A CONTRACT AND BY

---

[1] We express no opinion as to whether Civ.R. 60(B) relief would be appropriate on these facts.

ADOPTING AN INCOMPLETE SHARED PARENTING ORDER.

{¶ 17} Ms. Wells contends that the trial court erred in concluding that the parties had agreed to adopt Defendant's Exhibit 6 as their modified shared parenting agreement; although Ms. Wells admits that her signature was on the document, she denies that she agreed to its terms. Ms. Wells also contends that the court erred in adopting Exhibit 6 because it failed to address all of the factors required of a shared parenting agreement by R.C. 3109.02(G), such as parenting time on holidays.

{¶ 18} Ms. Wells's first argument under this assignment is that the trial court erred in deciding to enforce the parties' agreement to the modified shared parenting plan; she challenges the trial court's conclusion that she agreed to the terms of the shared parenting agreement that she signed in April 2011.

{¶ 19} At the hearing, Mr. Montei testified that he believed that the parties had reached an agreement to change their shared parenting arrangement in April 2011, when Ms. Wells signed the modified shared parenting agreement. For her part, Ms. Wells admitted that she had signed the agreement, but stated that "I never came to an agreement." She claimed she had been told by her attorney that she had to sign but that the agreement would not be binding. Ms. Wells's former attorney, who represented her in the divorce and through the spring of 2011, testified that she (the attorney) had not been interested in representing Ms. Wells in any litigation of the shared parenting agreement, that she informed Ms. Wells of this fact, and that all of their discussions had been "in aid of negotiating a settlement." The attorney also denied that she had told Ms. Wells that Ms. Wells had to sign the modified shared parenting agreement or that it "wouldn't matter" if she did sign it,

because nothing would be filed.

{¶ 20}    Mr. Montei also testified that he believed he and Ms. Wells could cooperate and make decisions jointly for their daughter's benefit, as they had sometimes done in the past.  He stated that their child was close to her extended families and to the new spouses, significant others, and siblings in her parents' and her life.  Ms. Wells expressed less optimism about the parties' abilities to cooperate, but agreed that the child was their top priority.

{¶ 21}    The trial court found that the parties, through their respective counsel, had negotiated the terms of a modified shared parenting agreement, which was executed in the spring of 2011.  The central provisions of this agreement were that the parties would alternate weekly parenting time and, due to the equalization of the child's time with each parent, neither party would be required to pay child support to the other.  The court noted that the modified shared parenting agreement had "not been adopted by this Court as a Final Order because Ms. Wells subsequently changed her mind and decided she no longer agreed to its terms."  The court continued:

> The credible evidence in this case suggests that the aforementioned modified Shared Parenting Plan which was executed by the parties was much more than an offer of settlement or some other form of negotiations as claimed by Ms. Wells.  That document is, in fact, a contract between the parties, supported by valid consideration, and as such, it serves as credible evidence of the parties' intentions as of the spring of 2011 when it was executed.  As such, it * * * serves as evidence to prove that, as of the spring

of 2011, both of the parties agreed that it was in their daughter's best interest to alternate weekly parenting time with her and that neither party pay child support to the other.

Since the time that she executed that document, Ms. Wells has changed her mind and now contends that it is no longer in [the child's] interest to alternate weeks or, for that matter, for the parties to comply with the remaining terms of Defendant's Exhibit 6, which she previously agreed to, despite her contentions to the contrary.

It is worth noting that Ms. Wells did not file her Motion seeking to terminate the prior shared parenting plan and grant her sole custody until March 7, 2012, approximately 15 months after Mr. Montei filed his motion to modify the original Shared Parenting Plan. Ms. Wells' Motion was also not filed until after the Guardian Ad Litem herein recommended that shared parenting be terminated. Ms. Wells had legal representation throughout the course of this case and she could have, at any time, filed to terminate the prior shared parenting arrangement and grant her sole custody if she believed that shared parenting between the parties was no longer working and not in [the child's] best interest.

The credible evidence in this case suggests that the reason why Ms. Wells did not previously file to terminate shared parenting and grant her sole custody was because she agreed at that time with the terms of the modified Shared Parenting Plan which she signed in the spring of 2011 (Defendant's

Exhibit 6), despite her contentions to the contrary.

**{¶ 22}** It is well established that if parties voluntarily enter into an agreement, the agreement becomes a valid and binding contract between the parties. *Phillips v. Phillips*, 5th Dist. Stark Nos. 2004CA105 and 2004CA005, 2005-Ohio-231, ¶ 22. "[A] settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and * * * such agreements are valid and enforceable by either party." (Citations omitted.) *Kilroy v. Peters*, 2d Dist. Montgomery No. 25547, 2013-Ohio-3384, ¶ 36, citing *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). Where the agreement is made outside the presence of the court, the court may properly sign a journal entry reflecting the settlement agreement in the absence of any factual dispute concerning the agreement. *Phillips* at ¶ 26, citing *Haas v. Bauer*, 156 Ohio App.3d 26, 33, 2004-Ohio-437, 804 N.E.2d 80 (9th Dist.). When there is a factual dispute, the trial court must conduct an evidentiary hearing to adjudicate the issues in dispute. *Id.* at ¶ 27.

**{¶ 23}** Because settlement agreements are governed by contract law, an appellate court must determine whether the trial court's decision to enforce a settlement agreement is based on an erroneous standard or a misconstruction of the law. *Lepole v. Long John Silver's*, 11th Dist. Portage No. 2003-P-0020, 2003-Ohio-7198, ¶ 14, quoting *Continental W. Condominium Owners*, 74 Ohio St.3d at 502; *Phillips* at ¶ 22. The standard of review is whether the trial court erred as a matter of law in deciding to enforce (or not enforce) the settlement agreement. *Ohio Title Corp. v. Pingue*, 10th Dist. Franklin No. 10AP-010, 2012-Ohio-370, ¶ 27, citing *Continental W. Condominium Owners* at 502.

{¶ 24} The trial court considered the parties' conflicting testimony about whether they had reached an agreement about modifying their shared parenting plan and their understandings of the effect of signing the modified agreement. The court also considered Ms. Wells's attorney's testimony about what she had (or had not) told Ms. Wells about the effect of signing the agreement. Finally, the court considered the circumstantial evidence embodied in the record, particularly the lengthy delay between the signing of the modified agreement and Ms. Wells's motion to terminate shared parenting, concluding that this delay undercut Ms. Wells's testimony that shared parenting between the parties was unworkable and not in their child's best interest. The court expressly stated that it did not find Ms. Wells's testimony concerning her execution of the modified shared parenting plan to be credible. Based on this evidence, the trial court concluded that Ms. Wells had "changed her mind" about the agreement, rejecting her argument that she had never agreed to its terms. The trial court did not abuse its discretion in reaching this conclusion.

{¶ 25} Beyond its conclusion that the parties had entered into a modified shared parenting agreement, the trial court conducted the statutory analysis of whether a modification of the shared parenting agreement was warranted. Such an analysis was appropriate since an agreement involving custody, as opposed to, for example, a real estate transaction, requires consideration of the best interest of the child and whether a modification is permitted as a matter of law.

{¶ 26} A court may not modify the designation of a residential parent and legal custodian of a child in a shared parenting decree without first determining that a "change in circumstances" has occurred and that the modification is in the best interest of the child. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546,¶ 33; *Sutton v.*

*Sutton*, 2d Dist. Montgomery No. 24108, 2011-Ohio-1439, ¶ 14.[2] Such findings are explicitly compelled by R.C. 3109.04(E)(1)(a), which provides:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>
> (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
>
> (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

---

[2] We have previously followed *Hasenjager*'s holding that a modification of the residential parent in a shared parenting decree requires a finding of a change of circumstances as well as a finding that it is in the child's best interest, *Gillum v. Gillum* 2d Dist. Montgomery No. 24401, 2011-Ohio-2558, ¶ 8 (interpreting R.C. 3109.04(E)(1)), whereas a termination of shared parenting requires only a best interest analysis. *Toler v. Toler*, 2d Dist. Clark No. 10-CA-69, 2011-Ohio-3510, ¶ 11, citing *Beismann v. Beismann*, 2d Dist. Montgomery No. 22323, 2008-Ohio-984, ¶ 8 (interpreting R.C. 3109.04(E)(2)).

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶ 27} In determining the best interest of a child, the court must consider all relevant factors, including, but not limited to: the wishes of the child's parents regarding the child's care; if the court has interviewed the child in chambers, the wishes and concerns of the child as expressed to the court; the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; the child's adjustment to the child's home, school, and community; the mental and physical health of all persons involved in the situation; the parent more likely to honor and facilitate court-approved parenting time or visitation and companionship rights; whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor; whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; and whether either parent has established a residence, or is planning to establish a residence, outside this state. R.C. 3109.04(F)(1).

{¶ 28} A trial court enjoys broad discretion when determining the appropriate allocation of parental rights and responsibilities. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Absent an abuse of that discretion, a reviewing court will affirm the custody determination of the trial court. *Id.* Abuse of discretion is a term used to indicate that a trial court's decision is unreasonable, arbitrary or unconscionable. *Blakemore v.*

*Blakemore* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 29}    The trial court found that there had been a change of circumstances "of substance" in the lives of both parents and the child since the divorce was granted and the original shared parenting plan was implemented.   Specifically, the court noted that both parents have had additional children and now reside with a significant other, so "the composition of each of their families have changed significantly."

{¶ 30}    With respect to the child's best interest, the court noted that, during an in camera interview with the court, the child expressed a desire to alternate weeks between her parents.   The court further found that the child had a loving relationship with both parents, as well as their significant others, her siblings, and extended families.   The court found that both parents provided appropriate care and living environments for their child, that the child excelled academically, and that some past behavioral issues (possibly rooted in anxiety) had been substantially resolved.   The child was well-adjusted "to her homes at both parents['] houses, her school and her community."   Despite some allegations to the contrary at the hearing, the court found that neither parent had "continuously and willfully denied the other parenting time" and that Mr. Montei was in "substantial compliance" with his child support obligation.

{¶ 31}    The trial court further found that the parties "have the ability to cooperate and make decisions jointly with respect to [their daughter] although it is true that they do not always do so.   * * * [T]hey clearly can and most probably will cooperate and make decisions for their daughter's benefit."   The court concluded that "it is not too much to ask them [the parties] to continue to work together for their daughter's benefit."   Thus, the court found that

continuing the shared parenting arrangement, as modified by the parties' spring 2011 agreement, was in their daughter's best interest.

{¶ 32} The trial court did not abuse its discretion in concluding that there had been a change of circumstances and that a modification of the shared parenting plan was in the child's best interest.

{¶ 33} We note that the trial court did not expressly address R.C 3109.04(E)(1)(a), which requires the court to retain the residential parent designated by the prior decree or the prior shared parenting agreement, unless a modification is in the best interest of the child *and* one of three enumerated factors applies. One of the enumerated factors is that "both parents under a shared parenting decree agree to a change in the designation of residential parent." The trial court's conclusion that the parties had agreed to the terms set forth in the modified shared parenting agreement, which designated Mr. Montei as the residential parent for school purposes, satisfied this requirement.

{¶ 34} In sum, we conclude that the trial court did not err in concluding that the parties had entered into an agreement to modify shared parenting in the spring of 2011, or in concluding that a change of circumstances and the best interest of the child supported the modification.

{¶ 35} Ms. Wells's second argument under this assignment of error is that the shared parenting order adopted by the court was "incomplete," and thus failed to satisfy the requirements of R.C. 3109.04(G). This section provides, in pertinent part, that "[a] plan for shared parenting shall include provisions covering all factors that are relevant to the care of the children, including, but not limited to, provisions covering factors such as physical living

arrangements, child support obligations, provision for the children's medical and dental care, school placement, and the parent with which the children will be physically located during legal holidays, school holidays, and other days of special importance."

{¶ 36} Ms. Wells claims that the modified shared parenting agreement is unenforceable because it does not address all of the issues described in R.C. 3109.04(G). Ms. Wells suggests in her brief that the trial court had not "actually reviewed the purported agreement of the parties," because if it had, it would have seen that the plan was incomplete. She also contends that the trial court erred in deviating from the calculations set forth in an attached child support worksheet, without making findings to support such a deviation.

{¶ 37} In the trial court, when Mr. Montei presented Exhibit 6 (the parties' 2011 agreement to modify the shared parenting plan), pages 7, 10, 11, 13 and 14 were missing, which included the page on which Ms. Wells had signed. Mr. Montei supplemented the exhibit to include pages 13 and 14, including Ms. Wells's signature, but pages 7, 10, and 11 were not made a part of the record. When the court attached the agreement to its judgment and incorporated it as "Exhibit A," pages 7, 10, and 11 were still missing. As discussed above, we sought clarification from the trial court about whether the pages were omitted from the record entirely or omitted only from some of the exhibits and from the trial court's judgment that was transmitted to this court. The trial court did not respond to our request, and we will proceed on the usual assumption that the complete record is before us.

{¶ 38} The content of pages 7, 10, and 11 is not entirely unclear. Page 7 presumably included a chart restating the verbal agreement (contained on page 6) as to which parent will get each holiday, as designated by odd- and even-numbered years. Page 7 likely

included additional provisions for school holidays and vacations. The parties do not seem to have disagreed as to any of these provisions. The content of pages 10 and 11 is more elusive, but related at least in part to health care costs (the continuation of a section that began on page 8). Although page 8 states that no child support shall be paid and that "both parties will pay any costs incurred * * * during the time [their daughter] is in their care * * *," pages 10 and 11 arguably contained language regarding child support, such as the manner of payment and notification requirements when a child becomes emancipated or otherwise ineligible for support.

{¶ 39} Ms. Wells correctly points out that some of the statutory factors required by R.C. 3109.04(G) to be included in a shared parenting agreement are omitted or not fully addressed in the agreement adopted by the trial court, because they apparently were addressed on the missing pages. For example, a chart delineating the division of holidays and birthdays was contained on page 7, which is missing, so the manner in which this time was distributed cannot be determined from the record. (School holidays were not addressed in the original shared parenting plan, but the child was not yet of school-age at that time.) Two pages of provisions ostensibly related, at least in part, to health care and changes in child support, are also omitted (pages 10 and 11). Other statutory factors, such as the physical living arrangements, amount of child support, and school placement, are addressed in the portions of the agreement that are attached to the judgment entry.

{¶ 40} Ms. Wells urges us to conclude that the agreement could not or should not have been adopted by the trial court because of the missing provisions. We agree. The trial court abused its discretion in adopting a shared parenting plan that did not address all of the

statutory factors required by R.C. 3109.04(G). Moreover, if a court is to adopt and enforce an agreement between the parties, it must adopt all of its provisions and incorporate the *entire* agreement into its judgment.

{¶ 41} Finally, Ms. Wells argues that, by incorporating the provision of the modified settlement agreement by which Mr. Montei was not required to pay child support, the court deviated from the child support worksheet without entering any finding to support such a deviation. While such findings are generally required when a court deviates from the specified formula in arriving at a child support calculation, we do not believe that such findings are always required where the parties have agreed to eliminate child support. However, again, in dealing with a child's best interest, the trial court must address directly why it is appropriate to deviate from the child support worksheet, or to cite evidence presented by the parties as to why they have eliminated the child support obligation.

{¶ 42} The first assignment of error is overruled in part and sustained in part. The matter will be remanded to the trial court for further consideration of the statutory factors that are not addressed in the parties' agreement, as well as for further consideration of the missing pages of the shared parenting agreement that the court sought to incorporate, in its entirety, into its judgment. Based on its consideration of these issues, the court is instructed to craft or adopt a complete, modified shared parenting plan.

{¶ 43} The second assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW BY SHIFTING THE BURDEN OF PROOF TO [MS. WELLS] TO PROVE THAT DEFENDANT'S EXHIBIT "6" WAS NOT IN THE CHILD'S BEST

INTEREST.

{¶ 44}   Ms. Wells claims that the burden of proof in any modification of shared parenting is on the movant and that, in adopting the modified shared parenting plan, the trial court improperly "shifted" this burden from Mr. Montei to her, requiring her to demonstrate why the parties' modified shared parenting plan was not in the child's best interest.

{¶ 45}   The trial court found that the parties had agreed to the modified shared parenting plan, notwithstanding Ms. Wells's subsequent assertions that she had not agreed. The court decided to enforce the modified agreement after finding that there had been a change of circumstances and that the agreement was in the best interest of the child.   The record does not support Ms. Wells's assertion that the court proceeded as if Ms. Wells bore the burden of proof on these issues.

{¶ 46}   The second assignment of error is overruled.

{¶ 47}   The third assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT MODIFIED THE RESIDENTIAL PARENT FOR SCHOOL PURPOSES.   THERE WAS NO EVIDENCE TO DEMONSTRATE A SUBSTANTIAL CHANGE IN CIRCUMSTANCES OR THAT THE MODIFICATION OF THE RESIDENTIAL PARENT WAS IN THE CHILD'S BEST INTEREST.

{¶ 48}   Ms. Wells contends that the trial court erred in modifying the residential parent for school purposes.   She contends that such a change was not in the child's best interest and that no change of circumstances was demonstrated.

{¶ 49}   Again, we note that the trial court's decisions with respect to modification of

shared parenting in this case were based on its conclusion that Ms. Wells had agreed to the changes, as well as its finding that the statutory factors necessary for such a modification had been satisfied. Ms. Wells's argument is belied by the trial court's finding that she agreed to the changes and that her testimony to the contrary lacked credibility. We also note that the agreement of the other parent, along with a finding of best interest, is one basis for changing the designation of residential parent. *See* R.C. 3109.04(E)(1)(a) and ¶ 26, supra.

{¶ 50} Although we stated in our discussion of the first assignment of error that the trial court erred in adopting or incorporating a shared parenting agreement that did not address all of the statutory factors and was missing pages, this finding did not disturb the trial court's conclusion that Ms. Wells had agreed to the modification.

{¶ 51} The third assignment of error is overruled.

{¶ 52} Ms. Wells' fourth assignment of error states:

THE COURT'S DECISION TO RETAIN SHARED PARENTING WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE. THERE WAS NO EVIDENCE TO SUPPORT THE COURT'S FINDINGS ON SIGNIFICANT SHARED PARENTING STATUTORY FACTORS. SHARED PARENTING SHOULD HAVE BEEN TERMINATED.

{¶ 53} Ms. Wells asserts that there was no evidence that the parties were able to cooperate and make decisions jointly for the child or to encourage a positive relationship with the other parent. On this basis, she contends that the court's decision to continue shared parenting was against the manifest weight of the evidence.

{¶ 54} The evidence established that there was much animosity between Mr.

Montei and Ms. Wells. Both had leveled numerous allegations against the other. For example, Ms. Wells and witnesses on her behalf testified that Mr. Montei had used pornography, had been fired from a job for having pornography on his computer, had behaved inappropriately at the child's soccer games, that his house and his mother's house (where the child spent time) were dirty and foul-smelling, that the son of Mr. Montei's live-in girlfriend had behavioral problems which could adversely affect the child, that Mr. Montei had caused Ms. Wells to miss important events in the child's life by failing to inform her of those events, and that Mr. Montei had coached their daughter about her statements to the court and had offered her a trip to Disney World if he prevailed in the custody proceedings.

{¶ 55} Mr. Montei alleged that Ms. Wells used marijuana, inflicted corporal punishment on the child or otherwise allowed her to sustain injuries at Ms. Wells's home, that Ms. Wells's husband keeps unsecured guns in their home, that Ms. Wells had sometimes behaved violently toward him during their marriage, that she had, on occasion, not seemed "sober" or "coherent" when he picked up their daughter, and that their daughter's past behavioral problems were rooted in problems at Ms. Wells's house. Both parties alleged that the other failed to foster a positive relationship with the other parent, and Mr. Montei alleged that Ms. Wells did not contact him first when she needed a babysitter, as required by their original agreement.

{¶ 56} The trial court concluded that most of these allegations were unfounded, overblown, or "not insurmountable," and that the parties would likely be able to put their difficulties behind them when the litigation ended. It found that they "have the ability to cooperate and make decisions jointly with respect to [the child] although it is true that they

do not always do so"; "they clearly can and most probably will cooperate and make decisions for their daughter's benefit." The court further stated that both parties "have a dedicated love for their daughter and a commitment to her future," and that both were very involved in her life. The court found that the parties had "misconceptions * * * concerning each other, significant others or extended family members," and that the parties should and would be able to "get beyond" these misconceptions in the near future, "perhaps with some assistance, if necessary." The court believed that the parties would eventually "be glad that they continued to share in the parenting responsibilities" while their daughter was a minor, because "that time passes quickly." "While it is always easier for only one person to make all decisions, that is not always the best and it is not the best thing for [their daughter] at this point in her life." The court expressed its confidence that the parties would do what was best for their daughter.

{¶ 57} We or other courts may have reached a different conclusion about whether Mr. Montei and Ms. Wells could cooperate enough to make shared parenting workable under the circumstances presented in this case. However, the trial court was well aware of the challenges that the parties had faced in the past and the tensions between them. It nonetheless concluded that the parties' commitment to their daughter would allow them to work together when the litigation was behind them, and that it would be in their daughter's best interest for them to do so. We cannot conclude that the trial court abused its discretion in determining that shared parenting was still feasible for this family.

{¶ 58} The fourth assignment of error is overruled.

{¶ 59} Ms. Wells's fifth assignment of error states:

THE COURT ERRED BY MODIFYING A SHARED PARENTING PLAN WHEN THE EVIDENCE DID NOT DEMONSTRATE IT WAS IN THE CHILD'S BEST INTEREST TO DO SO.

**{¶ 60}** Ms. Wells's argument under this assignment of error repeats her arguments, under other assignments, that it was not in the child's best interest to modify the shared parenting plan and that the "only basis" for doing so was the court's allegedly inaccurate conclusion that the parties had agreed to its terms. She also highlights a single statement in the court's decision, indicating that the court found Mr. Montei to be "more opinionated and less flexible" than Ms. Wells, although "equally committed" to their daughter. Based on that statement and further discussions of the parties' past difficulties with parenting issues, Ms. Wells concludes that there were "no findings to demonstrate that it was in the child's best interest to modify" the prior order.

**{¶ 61}** The trial court's observation that Mr. Montei was more opinionated and less flexible than Ms. Wells did not compel the conclusion that he could not serve as the residential parent for school purposes or that shared parenting could not work. Indeed, Mr. Montei was the parent who advocated for the continuation of shared parenting in these proceedings, whereas Ms. Wells sought to terminate it. As we stated above, the court found that both parties were very dedicated to the child, that some of the difficulties between them had been exaggerated during the litigation, and that they had "misconceptions" about one another that could be overcome. Moreover, the court's finding that Ms. Wells had agreed to the modifications it was enforcing was not a minor consideration, as Ms. Wells suggests.

**{¶ 62}** The court did not abuse its discretion in concluding that modifying shared

parenting, rather than terminating it, was in the child's best interest.

{¶ 63}    The fifth assignment of error is overruled.

{¶ 64}    The judgment of the trial court will be affirmed to the extent that it found a change of circumstances and that the child's best interest would be served by a modification of the shared parenting plan.   The judgment of the trial court will be reversed to the extent that its modified shared parenting plan did not address all of the statutory factors required of a shared parenting plan and incorporated an incomplete agreement of the parties.   The matter is remanded for further consideration of the terms of the modified shared parenting plan and the apparently missing pages that the trial court sought to incorporate.   Mr. Montei's motion for a stay of the appellate proceedings is denied.

. . . . . . . . . .

FAIN, P.J. and DONOVAN, J., concur.

Copies mailed to:

Valerie Juergens Wilt
Beverly Farlow
Hon. Thomas J. Capper