[Cite as *Bomberger-Cronin v. Cronin*, 2014-Ohio-2302.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### GREENE COUNTY

NOELLE BOMBERGER-CRONIN

     Plaintiff-Appellant

v.

MICHAEL S. CRONIN

     Defendant-Appellee


Appellate Case No.    2014-CA-4

Trial Court Case No.   2012-DR-0044


(Appeal from Common Pleas Court-
 Domestic Relations)

. . . . . . . . . . .

### O P I N I O N

Rendered on the 30th day of May, 2014.

. . . . . . . . . . .

DAVID P. MESAROS, Atty. Reg. No. 0012725, ADAM R. MESAROS, Atty. Reg. No. 0089828, 7051 Clyo Road, Centerville, Ohio 45459
     Attorneys for Plaintiff-Appellant

PATRICIA N. CAMPBELL, Atty. Reg. No. 0068662, 90 East Franklin Street, Bellbrook, Ohio 45305
     Attorney for Defendant-Appellee

. . . . . . . . . . . .

WELBAUM, J.

    **{¶ 1}**   In this case, Plaintiff-Appellant, Noelle Bomberger-Cronin (nka Nicole

Bomberger), appeals from a divorce decree and shared parenting decree allocating parental rights and responsibilities.[1] Noelle contends that the trial court abused its discretion in creating a shared parenting plan as opposed to awarding custody of the parties' minor child, A.C., to Noelle. In addition, Noelle contends that even if we uphold the shared parenting decision, the shared parenting plan must be vacated because it is insufficient as a matter of law. Finally, Noelle contends that the trial court abused its discretion in awarding a month-to-month parenting schedule that was contrary to the recommendation of the Guardian Ad Litem (GAL), Heather Shannon.

{¶ 2} We conclude that the trial court did not abuse its discretion in creating a shared parenting plan. The record indicates that the parties had shared parenting with equal parenting time without incident for a substantial period of time before the final divorce hearing. The shared parenting plan also was not insufficient because it omitted school placement; the child was well below school age, and this was not, therefore, a relevant factor under R.C. 3109.04(G). Finally, the trial court did not err in deviating from the recommendations of the GAL. The trial court was not obligated to follow the GAL's recommendations, and the court's decision was not unreasonable, arbitrary, or unconscionable. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 3} Noelle and Scott were married in March 2011, and separated on December 24,

---

[1] For purposes of convenience, we will use first names when referring to Appellant and to Defendant-Appellee, Michael Scott Cronin (known as Scott).

2011. One child, A.C., had been born of the marriage, on December 19, 2011. Noelle initially filed a civil protection order against Scott, which prevented him from access to the child. The court dismissed the order in March 2012, and in April 2012, Scott was permitted parenting time with A.C. twice a week for up to three hours at the Greene County Visitation Center. After Scott had successfully exercised visitation, the court granted Scott equal parenting time in July 2012. At that time, the parties alternated a two-day/three-day visitation schedule. In December 2012, Scott filed a motion for shared parenting, and attached a shared parenting plan. He proposed that his residence be the legal residence for school purposes and that the parties have equal parenting time on alternating weeks. At that time, Noelle lived in Fairborn, Ohio, and Scott lived in Union, Kentucky, about 83 miles away. Scott also proposed that the parties meet half-way between to exchange A.C. Noelle did not submit a shared parenting plan.

{¶ 4} In June 2013, the parties filed an agreed entry allocating parenting time during the summer, basically in one-month increments. They also agreed that if the court had not issued a decision by August 22, 2013, visitation would be on a schedule that alternated two-week periods for each parent.

{¶ 5} On June 3, 2013, the trial court held a final divorce hearing. The parties stipulated to disposition of all matters other than the allocation of parental rights and responsibilities. Both parties testified at the hearing. In addition, the court heard testimony from the GAL, Heather Shannon, who had prepared two reports, and from Scott's father and brother, who lived with Scott at the same residence in Kentucky.

{¶ 6} According to the testimony, both parties were in the military when the divorce was filed. Scott was in the Army, and Noelle was in the Air Force. Noelle had been stationed

at Wright Patterson Air Force Base (WPAFB) since July 2011. By the time of the final hearing, the parties' situations had both changed, and both were unemployed. Scott had last been employed in March 2013, when he was part of the Warrior Transition Unit, which is a holding company for soldiers who have been critically injured, to allow them to heal. Scott was in the process of applying for disability, and also planned to train to be an electrician.

{¶ 7} Noelle had been in an auto accident in 2011, which resulted in a partial amputation of her left arm. She also had further surgery on her arm in January 2013. As a result of her injuries, Noelle's status with the Air Force was questionable. She, therefore, decided to voluntarily leave the Air Force and relocate to New Jersey, where her family lived. At the time of the final hearing, Noelle was on permissive leave, and her Air Force obligation would end on July 28, 2013. She planned to return to New Jersey at the end of June 2013 and pursue a teaching certificate. Both parties were also well-educated. Scott had a bachelor's degree in geography, and Noelle had a bachelor's degree in mechanical engineering and had done master's level work as well.

{¶ 8} The GAL's initial report recommended that the parties share equal parenting time. However, after the GAL learned that Noelle planned to move to New Jersey, she recommended that Scott have two consecutive weeks every six weeks prior to the time that A.C. entered formal schooling. During the divorce process, the parties had shared equal time for almost a year before the hearing. The child was doing well with this arrangement and had bonded to both families. The GAL indicated that both parents were good parents, and both had the child's best interests at heart. She stated that but for Noelle's anticipated move, she would have recommended shared parenting on a week to week basis.

**{¶ 9}** After hearing the evidence, the trial court filed a decision and order to modify the shared parenting plan and for the preparation of the final decree. The court concluded that it was in A.C.'s best interest to adopt Scott's proposed shared parenting plan, with modifications. The court modified section four of the plan to state that the parties would have equal parenting time and would have parenting time on an alternating month basis, beginning on the last day of the month at 5:00 p.m., with any additional parenting time to be scheduled by the parents. The court also modified section seven of the plan to state that the person receiving the child would be responsible for travel arrangements and costs. In addition, the court awarded zero child support, incorporated a reference to use of Skype or other online technology, and required the parties to use software that was designed to help facilitate communication. The court further added that because the child was not of school age, each parent would be the residential parent when the child was in his or her care.

**{¶ 10}** The final decree of divorce was filed on December 27, 2103, and a corrected final decree and shared parenting plan was filed in January 2014. Noelle appeals from the decree of divorce and shared parenting decree.

## II. Did the Trial Court Abuse its Discretion in
## Creating the Shared Parenting Plan?

**{¶ 11}** Noelle's First Assignment of Error states that:

The Trial Court Abused Its Discretion in Creating a Shared Parenting Plan It Determined to be in the Best Interests of the Child as Opposed to Awarding Custody of that Child to Appellant as Recommended by the Guardian Ad Litem.

{¶ 12}    Under this assignment of error, Noelle contends that the trial court erred in its conclusions about the GAL's recommendation. Noelle further argues that the trial court should have followed the GAL's recommendation and should have designated her the residential and custodial parent.  In addition, Noelle contends that the trial court failed to consider evidence indicating that she, essentially, is the superior choice for a residential parent.

{¶ 13}    Regarding shared parenting plans, R.C. 3109.04(A)(2) provides that:

If at least one parent files a pleading or motion in accordance with division (G) of this section and a plan for shared parenting pursuant to that division and if a plan for shared parenting is in the best interest of the children and is approved by the court in accordance with division (D)(1) of this section, the court may allocate the parental rights and responsibilities for the care of the children to both parents and issue a shared parenting order requiring the parents to share all or some of the aspects of the physical and legal care of the children in accordance with the approved plan for shared parenting.

{¶ 14}    R.C. 3109.04(D)(1)(a)(iii) further provides that:

If the court determines that one of the filed plans is in the best interest of the children, the court may approve the plan. If the court determines that no filed plan is in the best interest of the children, the court may order each parent to submit appropriate changes to the parent's plan or both of the filed plans to meet the court's objections or may select one filed plan and order each parent to submit appropriate changes to the selected plan to meet the court's objections. If changes to the plan or plans are submitted to meet the court's objections, and if any of the

filed plans with the changes is in the best interest of the children, the court may approve the plan with the changes.

**{¶ 15}** Consistent with the statute, the trial court concluded that Scott's plan was in the best interest of A.C., but ordered changes to be made to the plan. The court then filed the plan as modified.

**{¶ 16}** "The standard generally used to review trial court decisions in domestic relations cases is 'abuse of discretion.'" *Edwards v. Edwards*, 2d Dist. Montgomery No. 25309, 2013-Ohio-117, ¶ 17, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). In the context of allocating parental rights and responsibilities, trial courts have broad discretion, and we will affirm a custody determination absent an abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N .E.2d 846 (1988). "Abuse of discretion is a term used to indicate that a trial court's decision is unreasonable, arbitrary or unconscionable." *Montei v. Montei*, 2d Dist. Clark No. 2013 CA 24, 2013-Ohio-5343, ¶ 28, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 17}** After reviewing the parenting plan and the evidence, including the reports of the GAL, we cannot conclude that the trial court abused its discretion when it found the modified shared parenting plan to be in A.C.'s best interests. When deciding the best interest of a child, courts consider all relevant factors, and are guided by the specific factors listed in R.C. 3109.04(F)(1).

**{¶ 18}** Noelle concedes that the trial court was correct in finding that most of these factors were equal as to each parent. She contends, however, that the court failed to give sufficient weight to the fact that Scott failed to remember his parenting time, and also failed to

consider the fact that Noelle facilitated Scott's relationship and time with A.C. The evidence was conflicting on these points, however. Noelle testified that there had been a few instances when she called Scott at the visitation time to see where he was and he did not remember that he was supposed to be there. However, one of the missed days was due to a change that Noelle made because of her surgery. Furthermore, contrary to Noelle's testimony, Scott and his father both testified that Noelle made frequent changes to visitation and Scott had to adapt to them. Scott stated that things were constantly moving, and it was hard to keep up with Noelle's changes. He stated that he tried to be as flexible as possible to maintain a good relationship with Noelle. In addition, the evidence did not indicate that Noelle always facilitated Scott's relationship and time with A.C. Instead, she opposed every request that Scott made to obtain extended parenting time. In addition, Noelle required Scott to drive the round-trip distance from his home in Kentucky to Fairborn (a little more than an hour each way), even though the court had told the parties to start meeting or working on meeting at a half-way point for transportation.

{¶ 19} The trial court apparently found Scott's testimony more credible. We generally defer to trial court decisions on credibility. *Edwards*, 2d Dist. Montgomery No. 25309, 2013-Ohio-117, at ¶ 14. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 20} Noelle also argues that the trial court failed to consider that she has no

relationship with Scott's extended family, and that she described the relationship as "hostile." Relationships are not a one-way street, however. Noelle was invited to Scott's family's house to see where A.C. lived, but she claimed that she had not been able to find the time to make the hour-long trip there. Additionally, the evidence indicates that both Scott and Noelle expressed willingness to cooperate and communicate with each other about their child. Accordingly, we find no abuse of discretion on the part of the trial court.

{¶ 21} Noelle's final argument under this assignment of error is that the trial court should have awarded her sole custody or should have rejected the shared parenting plan because she, apparently, is the more appropriate choice. In addition, Noelle again argues that the parties' communication is not stellar. We have already discussed the communication issue and need not address it further.

{¶ 22} The trial court's failure to conclude that Noelle is the better choice is not arbitrary, unreasonable, or unconscionable. According to the record, the parents are equally loving and equally capable of parenting the child. The GAL's report, in fact, describes both parents as "great parents." Court's Exhibit 1, p. 25; Court's Exhibit 2, p. 8.

{¶ 23} In this regard, Noelle focuses on the fact that she was the one who made sure Scott knew and exercised his parenting time, and scheduled and followed up on medical appointments. The record indicates that both parties were very attentive to their child's needs. In fact, even though Noelle made the appointments, Scott drove a great distance to attend.[2]

{¶ 24} We note that Noelle was the primary caretaker when the divorce was initiated. However, the parties also shared equal parenting time for nearly a year and a half before the final

---

[2] These appear to have been routine checkups. The record does not indicate that the child had any significant medical issues.

hearing was held. Noelle, herself, testified that the shared parenting went very well, and that it did not have an adverse effect on A.C. June 3, 2013 Transcript of Proceedings, p. 53.

{¶ 25} In a situation where a mother had been the primary caretaker before she relocated, and the father the primary caretaker thereafter, we rejected the mother's contention that the court should have awarded custody to her because she had been the primary caretaker for her children and was a "fit parent." *Davis v. Davis*, 2d Dist. Clark No. No. 2011-CA-71, 2012-Ohio-418, ¶ 6-7. In this regard, we stressed that "[w]here, as in the present case, both parents have served as primary caregiver at different times, a trial court has discretion to designate the father as legal custodian and residential parent if other evidence preponderates in his favor regarding the best interest of the children." *Id*. at ¶ 8, citing *Williams–Booker v. Booker*, 2d Dist. Montgomery Nos. 21752, 21767, 2007-Ohio-4717, ¶ 13-16. Although the case before us involves slightly different circumstances, the fact is that both parents have been primary caregivers for A.C. for a substantial period of time, and both are equally capable of parenting their child.

{¶ 26} Noelle notes that the recommendation of the guardian ad litem is one factor the trial court should consider in determining whether shared parenting is in the best interest of the child. R.C. 3109.04(F)(2)(e). In the present case, the GAL initially recommended shared parenting with equal time for each parent. After the GAL learned that Noelle was relocating out of state, she recommended that Noelle be designated the residential parent, with Scott having two weeks of visitation every six weeks. The GAL testified at the hearing that her recommendation would still be shared parenting, with equal parenting time to both parents, but for the relocation issue.

**{¶ 27}** "A trial court is not bound to follow a guardian ad litem's recommendation." (Citation omitted.) *Lumley v. Lumley*, 10th Dist. Franklin No. 09AP-556, 2009-Ohio-6992, ¶ 46. "As the fact finder, the trial court determines the guardian ad litem's credibility and the weight to be given to the guardian ad litem's recommendation. Because assessment of the credibility and weight of the evidence is reserved for the trial court, we will not second guess the court's decision to disregard the guardian ad litem's recommendation." (Citation omitted.) *Id.*, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

**{¶ 28}** In the case before us, the child is not school-age, and the trial court correctly observed that there is no difference in the amount of travel time, whether the child stays two weeks at one house and six weeks at another, as opposed to one-month increments. In either situation, the child will be traveling three times in two months. Therefore, the GAL's recommendation is no more beneficial to the child, and results in one party losing substantial time with the child.

**{¶ 29}** The reason for the wide latitude given trial courts is that "custody issues are some of the most difficult and agonizing decisions a trial judge must make." *Davis* at 418. Based on the record before the trial court, we find no abuse of discretion in the creation of the shared parenting plan.

**{¶ 30}** Noelle's First Assignment of Error is overruled.

### III. Was the Shared Parenting Plan
### Insufficient as a Matter of Law?

**{¶ 31}** Noelle's Second Assignment of Error states that:

In the Event this Court Upholds the Shared Parenting Decision the Shared

Parenting Plan Must be Vacated Being Insufficient as a Matter of Law.

{¶ 32}    Under this assignment of error, Noelle contends the shared parenting plan is insufficient because the trial court order eliminated the school district placement and stated that each parent would be the residential parent while the child is in that particular parent's care. According to Noelle, this violates R.C. 3109.04(G).

{¶ 33}    R.C. 3109.04(G) states that:

A plan for shared parenting shall include provisions covering all factors that are

relevant to the care of the children, including, but not limited to, provisions

covering factors such as physical living arrangements, child support obligations,

provision for the children's medical and dental care, school placement, and the

parent with which the children will be physically located during legal holidays,

school holidays, and other days of special importance.

{¶ 34}    In arguing that the trial court erred, Noelle relies on *Montei*, 2d Dist. Clark No. 2013 CA 24, 2013-Ohio-5343.   In that case, we held that the trial court had abused its discretion by adopting a shared parenting plan that failed to address all the statutory factors in R.C. 3109.04(G).  *Id*. at ¶ 40.   However, in *Montei*, the shared parenting plan was missing several pages, and the trial court failed to respond to our request to clarify the record.   *Id.* at ¶ 11-13, and 37-40.   We, therefore, decided the appeal on the basis of the material provided, and concluded that the court had abused its discretion in adopting the plan.   *Id.*

{¶ 35}    We agree with our holding in *Montei*, but the case before us does not involve a similar situation.   The pertinent language in R.C. 3109.04(G) is that the plan shall cover relevant

factors. At the time of the court's decision, the child was two years old, and was not ready for placement in school. Therefore, her "school placement" was not a relevant factor. At some point it will be relevant, and the plan can be modified at that time.

{¶ 36} Noelle also argues that both parents were unemployed at the time of the hearing, and the child's home state should have been specified for public assistance purposes under R.C. 3109.04(A)(2). In this regard, R.C. 3109.04(A)(2) states that "If the court issues a shared parenting order under this division and it is necessary for the purpose of receiving public assistance, the court shall designate which one of the parents' residences is to serve as the child's home."

{¶ 37} This argument is a "red herring" of sorts, because neither parent was on public assistance at the time of the hearing, and neither parent told the trial court that he or she anticipated being on public assistance. In fact, both parents (each of whom had separated from the military due to injuries), told the court that they anticipated being employed. Scott stated that he intended to enter an apprenticeship program that would pay about $16 per hour, and in fact, the affidavit of income Scott filed on October 17, 2013, indicated that he was employed by the Social Security Administration at a wage of $32,519 per year. Similarly, Noelle told the court that she was on paid leave from the military until the end of July 2013, and intended to take two Praxis tests in July 2013 that would allow her to find a job as a teacher. She indicated that until she was able to find a teaching job, she would substitute teach so that she would have an income.

{¶ 38} Finally, Noelle contends that the differing parenting styles had caused problems for A.C. with regard to the equal parenting time. The matters in question were minor, and as

the court had pointed out more than a year earlier, it was not going to micro-manage the care of the child. *See* 2nd Amended Temporary Order and Notice, Doc. #49, p. 1. The facts in the case, including the reports of the GAL, indicate that Noelle attempts to control all aspects of A.C.'s care, even attempting to make Scott keep a detailed journal of what the child eats and her daily activities when she is at his home. This is unnecessary. As we stressed earlier, both parents are equally capable of parenting the child, and neither has a right to control the other's parenting time.

{¶ 39}   Based on the preceding discussion, the Second Assignment of Error is overruled.

## IV.   Did the Trial Court Err
## in Ordering Month-to-Month Visitation?

{¶ 40}   Noelle's Third Assignment of Error states as follows:

Regardless of How Decision Making for the Child is Allocated Between the Parents the Trial Court Abused Its Discretion in Awarding a Month to Month Parenting Time Schedule Contrary to the Guardian Ad Litem's Recommendation.

{¶ 41}   Under this assignment of error, Noelle contends that the trial court should have followed the GAL's recommendation of a visitation schedule that would allow Scott to see A.C. for two weeks every six weeks. According to Noelle, although she had originally agreed to a month-to-month visitation schedule, she clarified in her testimony that she intended such a trial period only for summer periods. Noelle also points out that she never even conceded that a

week-to-week arrangement between Ohio and Kentucky was in the child's best interests.

{¶ 42} As was noted earlier, the trial court is not required to follow the recommendations of a guardian ad litem. *Lumley,* 10th Dist. Franklin No. 09AP-556, 2009-Ohio-6992, at ¶ 46. Furthermore, while the trial court initially expressed some reservation about a 50-50 split due to the distance between New Jersey and Kentucky, Noelle's citation from the transcript ignores the fact that the court ultimately realized that the month-to-month visitation that Scott proposed involved no more traveling for the child than the six-week/two week schedule recommended by the GAL. June 3, 2013 Transcript of Proceedings, pp. 82-83 and 129-130.

{¶ 43} We should also stress that one parent's opinion about his or her fitness as a parent or about appropriate parenting methods does not take priority over the opinions of the other parent, and most certainly does not supplant a trial court's opinion. We have often stressed the fact that "children have certain rights, including ' "the right to love each parent, without feeling guilt, pressure, or rejection; the right not to choose sides; the right to have a positive and constructive on-going relationship with each parent and most important * * * the right to not participate in the painful games parents play to hurt each other or to be put in the middle of their battles." ' " (Citations omitted.) *In re Custody of Harris*, 168 Ohio App.3d 1, 2006-Ohio-3649, 857 N.E.2d 1235, ¶ 11 (2d Dist.). We cannot stress this concept enough, and it extends to all parties and their extended families.

{¶ 44} Accordingly, Noelle's Third Assignment of Error is without merit and is overruled.

## V.   Conclusion

**{¶ 45}**   All of Noelle's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and HALL, J.,   concur.

Copies mailed to:

David P. Mesaros
Adam R. Mesaros
Patricia N. Campbell
Hon. Steven L. Hurley